*E-Filed 5/9/12*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAMON ROBINSON, | No. C 10-4772 RS (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| RICK HILL, Warden, | |
| Respondent. | |

### INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a *pro se* state prisoner. For the reasons stated herein, the petition is DENIED.

### BACKGROUND

In 2007, in the Alameda County Superior Court, petitioner, pursuant to a plea agreement, (1) pleaded *nolo contendere* to two counts of attempted murder of a police officer, and (2) admitted to an allegation that petitioner personally and intentionally discharged a firearm. Consequent to this plea agreement, petitioner was sentenced to a total term of thirty-one years and four months in state prison. Petitioner filed the instant federal

1 habeas action after being denied relief on state habeas review.

2 According to the record, in November 2005 petitioner threatened to shoot his
3 grandmother's "fucking brains out" with a rifle after she had expressed her irritation with
4 him because he had thrown out cupcakes his mother had baked. Just prior, petitioner had
5 threatened to bash his grandmother's "fucking brains out" with a karate stick before saying
6 that he had "something better for her." (Ans., Ex. B, Vol. 1 at 20–46.) He left and returned
7 with a rifle case, which he unzipped and from which he withdrew the rifle before pointing it
8 at her. Petitioner telephoned his mother, who lived down the street, and said, "come down to
9 grandma's I got something for you." He called again a few minutes later and said, "you
10 better get down here because I'm going to blow grandma's fucking brains out." Petitioner's
11 mother soon arrived, as did police.

12 Petitioner told his mother and grandmother that "the first mother fucker [i.e., police
13 officer] that comes through this door is going, something going to go down," and later that he
14 was going to "blow their head off." His grandmother went to the door and told police that
15 petitioner was armed. (Ans., Ex. B, Vol. 2 at 1–66.) Petitioner looked through the front door
16 and pointed a firearm at the two police officers, who dove out of the way just before he fired
17 multiple shots at them. Police were able to get the mother and grandmother to safety, and
18 then petitioner barricaded himself inside the residence, surrendering without further incident
19 roughly an hour later. (*Id.*, Ex. E.)

20 As grounds for federal habeas relief, petitioner claims that (1) counsel rendered
21 ineffective assistance, (2) there was prosecutorial misconduct, (3) there was judicial
22 misconduct, and (4) his sentence violated the Eighth Amendment.

**STANDARD OF REVIEW**

24 This Court may entertain a petition for writ of habeas corpus "in behalf of a person in
25 custody pursuant to the judgment of a State court only on the ground that he is in custody in
26 violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).
27 The petition may not be granted with respect to any claim that was adjudicated on the merits

in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

**DISCUSSION**

**I.    Assistance of Counsel**

Petitioner claims that counsel rendered ineffective assistance by (A) failing to conduct a "reasonable" pre-trial investigation, and (B) failing to present evidence during the plea bargain phase and coercing petitioner into accepting the plea. After a defendant has entered a plea of guilty, the only challenges left open on federal habeas corpus review concern the voluntary and intelligent character of the plea and the adequacy of the advice of counsel.[1]

---

[1] There are exceptions to this general bar. For example, a defendant who pleads guilty still may raise in habeas corpus proceedings the very power of the state to bring him into court to answer the charge brought against him, *see Haring v. Prosise*, 462 U.S. 306, 320 (1983)

Where, as here, a petitioner is challenging his guilty plea," he must show (1) his 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56–57).

Under the first prong of *Womack*, a petitioner must establish that defense counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms, *Strickland v. Washington*, 466 U.S. 668, 687–68 (1984), "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 690). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689). Overall, "the standard for judging counsel's representation is a most deferential one." *Id.* at 788.

### A. Pre-Plea

Petitioner alleges that counsel failed to make a "reasonable" pre-trial investigation and present a defense during the preliminary hearing in the following respects: "1) failure to seek funds for medical and psychiatric examination, investigative services, and expert testimony; 2) 'failure to investigate the complicit nature of the murder of [petitioner]'s stepfather to the overall causation of the instant case'; 3) failure to investigate and verify that [petitioner] took a personal day from work upon learning of the murder of his stepfather; 4) failure to investigate [petitioner]'s family background of prolonged physical, emotional, and psychological abuse at the hands of his mother and grandmother; 5) failure to make a

---

(citing *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)), and may raise a double jeopardy claim, *see id.* (citing *Menna v. New York*, 423 U.S. 61 (1975)).

*Pitchess* motion[2] to insure truthful testimony by the police; 6) failure to file motions to preserve the ballistic vest for independent testing; 7) failure to file a motion to suppress the 911 call made by [petitioner]"; and 8) failing to act as an effective advocate.

Claims 5–8 are DENIED because petitioner has failed to provide facts sufficient to show that investigation of such matters would have in any way aided his defense. Failure to identify such information is a failure to show that trial counsel's performance was deficient, or that the alleged deficiency resulted in prejudice, the necessary showing to sustain an ineffective assistance claim. *See Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997).

Claims 1–4 rest on petitioner's belief that the offenses were "crimes of passion." Such "passion" is attributable to (1) his troubled family life, which caused him to suffer from "Battered Person Syndrome," (2) his family's complicity in the death of his step-father, prompting the argument that led to the instant offenses, (3) threats from his family members that they would kill him as they had his step-father, and (4) his family's use of the police in this instance as an attempt to have him killed. Defense counsel's failure to investigate these allegations or to mount a defense based on them was, according to petitioner, a failure sufficient to deprive him of his Sixth Amendment right to counsel.

Petitioner's claims cannot succeed. First, the alleged errors occurred prior to petitioner's entry of a guilty plea. "As a general rule, one who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek federal habeas corpus relief on the basis of pre-plea constitutional violations." *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994). As these claims exclusively concern pre-plea errors, petitioner is not entitled to federal habeas relief.

Second, this Court must conduct a "doubly" deferential review of ineffective assistance of counsel claims under § 2254. *See Cullen v. Pinholster*, 131 S. Ct. 1388,

---

[2] Under California's *Pitchess* procedure, a criminal defendant has a limited right to discovery of peace officer personnel records, specifically of complaints made against the officer. *Pitchess v. Superior Court*, 11 Cal. 3d 531 (1974); Cal. Penal Code §§ 832.7, 832.8; Cal. Evid. Code §§ 1043–1045.

1410–11 (2011); *Richter*, 131 S. Ct. at 788. Petitioner's claims fail under this doubly-deferential standard. Even if counsel were aware of petitioner's "crime of passion" allegations, this Court cannot say that his decision to advise his client to plead guilty was anything other than a reasonable tactical decision. Consider the undisputed facts. Petitioner threatened his mother and grandmother at gunpoint, and fired at two police officers. Any possibly mitigating evidence would have to overcome this impressively persuasive evidence. Also, a "crime of passion" defense — which the Court construes as meaning heat of passion, reducing murder to manslaughter — is not applicable here because the officers were not the cause of any alleged passion.[3] His allegations that his grandmother initiated the fight by pointing a knife at him is also unavailing. Any mitigating effect created by such allegations is undone by the fact that petitioner did not act out of passion but rather left the room to retrieve a karate stick and then a rifle. Under such a record, the Court must accord great deference to defense counsel's apparent tactical decision, despite the crime of passion allegations, to advise his client to enter into a plea agreement. *Richter*, 131 S.Ct. at 790 (citations omitted).

Finally, petitioner has not shown prejudice. He received a sentence of thirty-one years and four months as a result of the negotiated disposition, rather than the sentence of 105 years-to-life he would have received had he been convicted after a trial. (Ans., Ex. B, Vol. 6 at 71.) Also, the evidence supporting petitioner's guilt was strong, including the testimony of petitioner's grandmother, and that of the police officers petitioner shot. (*Id.*; Pet., Ex. E.) On this record, petitioner's claim is DENIED.

**B. Plea Bargain Phase**

Petitioner states that counsel tricked him into accepting the negotiated plea by overemphasizing his potential sentence should the case have gone to trial, without regard for

---

[3] California defines "voluntary manslaughter" as "the unlawful killing of a human being without malice" upon "a sudden quarrel or heat of passion." *See* Cal. Pen. Code § 192. The killing must be in the "heat of passion," i.e., the effect of the provocation must be such that the defendant acts emotionally rather than rationally. *See People v. Bridgehouse*, 47 Cal. 2d 406, 413 (Cal. 1956), and *People v. Borchers*, 50 Cal. 2d 321, 329 (Cal. 1958).

potential mitigating factors such as the fact that the case involved "no actual victim, no loss of life, no injury or great bodily injury of any kind, no bloodshed, and minimal damage to property." (Pet. at 9–10.) Also, petitioner claims that counsel failed to advise him fully that: (1) a no-contest plea would be converted into a guilty plea by the judge, with petitioner "essentially admitting to every element of the alleged crime"; (2) "he was entitled to a jury trial to prove every essential element of [the] alleged crime beyond a reasonable doubt"; (3) under a January 2007 law it should have been "impossible and illegal for a [j]udge to have the power to impose an enhancement that by law would need [j]ury deliberation, unless admitted by the defendant"; (4) he was "accepting a sentence in the aggravated term," while unaware of possible mitigating circumstances; (5) a plea itself is a conviction; and (6) a plea "waives all issues of 'defects' and 'misconduct.'" (*Id.* at 10–11.)

Petitioner's claims that defense counsel tricked him into pleading, or failed to inform him of significant information are undone by affirmations made by petitioner during the plea hearing. Such affirmations carry a "presumption of verity" that "constitute[s] a formidable barrier" when the plea is subsequently challenged in a collateral proceeding. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). During the plea colloquy, the judge informed petitioner that a no-contest plea would be converted into a guilty plea, (Ans, Ex. B at 11) and that he was entitled to, yet was waiving his right to, a jury trial (*id.* at 9.) The judge further confirmed that petitioner was making his plea after he had "sufficient time" to consult with counsel, (*id.* at 5) and that his plea was being entered "freely and voluntarily with full knowledge of all [his] rights." (*Id.* at 10.) As to his claim regarding a 2007 law, petitioner has failed to specify which law this is. Any ruling by this Court on such claim would be entirely speculative. In sum, nothing in the record indicates that petitioner was incompetent when making these affirmations. Petitioner fails to substantiate his claim that his plea was involuntary and unknowing in regard to these factors in a manner sufficient to overcome the "presumption of verity" attached to this record.

Petitioner fails to establish that any of the alleged errors made by counsel are attributable to counsel's unreasonable conduct, nor does he show that but for that conduct there is a reasonable possibility that petitioner would have gone to trial. The state court was not objectively unreasonable in rejecting petitioner's claim that his plea was not knowing and intelligent or the result of erroneous advice and trickery by defense counsel. Accordingly, petitioner's claims are DENIED.

## II. Alleged Prosecutorial Misconduct

Petitioner alleges that the district attorney committed prosecutorial misconduct by (A) destroying "material evidence" of exculpatory value, (B) failing to "investigate" or "interrogate" its own witness, resulting in a due process violation, and (C) using perjured testimony in order to obtain a conviction. A defendant's due process rights are violated as a result of a prosecutor's misconduct only when that conduct renders the trial "fundamentally unfair." *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). As explained below, none of these claimed instances of misconduct have been substantiated.

### A. Brady

Petitioner alleges that at least five of the deputy district attorneys "'knew' or 'should have known', the true causation of the instant case" due to their knowledge of a statement of exculpatory value, which subsequently disappeared or was destroyed.[4] (Pet. at 12.) Constructive knowledge of this statement, according to petitioner, should have triggered the prosecution's duty to investigate its own witnesses before the pre-trial examination, and to

---

[4] The alleged statement was somehow corroborative of petitioner's "step-father" theory and contrary to the prosecution's "cupcake" theory. (Pet. at 12.) Petitioner claims that it indicated that one of the prosecution's key witnesses (petitioner's grandmother) deliberately endangered the lives of petitioner, petitioner's mother, herself, and police officers in order "to avoid probable accountability for the murder of the petitioner's step-father." (*Id.*) Petitioner asserts that the statement disappeared or was destroyed "after it was discussed with the Honorable Judge Trina Stanley, the counsel on behalf of the People, and 'retained' counsel for the defense, from Cooper Law Offices of Berkeley." (*Id.*)

disclose any exculpatory evidence to the defense. (*Id.*)

Petitioner's claim must fail. First, it is premised on alleged prosecutorial misconduct leading up to the entry of a plea which is unavailable in a federal habeas petition following a guilty plea unless it relates to the voluntary and intelligent character of the plea itself. *Hill*, 474 U.S. at 56–57; *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Second, petitioner provides no factual basis for his allegation that the prosecution destroyed "material evidence." Under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution must disclose material evidence "favorable to an accused," *id.* at 87, even if the accused has made no request for the evidence in question. *United States v. Agurs*, 427 U.S. 97, 110–11 (1976). In order to establish a *Brady* violation, petitioner must show that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or impeaching; (2) that evidence had been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Petitioner's allegations that the prosecution destroyed the statement, or as to what the statement contained, are conclusory and without supporting evidence. Moreover, he has failed to show prejudice. The exculpatory statement, about which we know little, would have to overcome the power of the eyewitness testimony of two police officers, as well as that of petitioner's mother and grandmother. Accordingly, petitioner's claim is DENIED.

### B. Due Process

Petitioner asserts that the prosecution was negligent in failing to "investigate" and "interrogate" its own witnesses, placing disputable facts outside of the record. (Pet. at 13.) This claim fails for two reasons. First, it involves an alleged pre-plea error. Second, petitioner has provided no factual basis for the allegation. Petitioner accuses the prosecution of negligently relying on witnesses' testimony that it should have known was false had it conducted a reasonable investigation. (*Id.* at 13-14.) The prosecution may not obtain a conviction through the use of testimony which it knows or should know is perjured. *See Agurs*, 427 U.S. at 103. In order to prevail on such a claim, "petitioner must show that (1) the

testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (citing *Napue v. People of State of Ill.*, 360 U.S. 264, 269–71 (1959)). Petitioner does not advance support for any of these three necessary elements, and so cannot establish that the prosecution acted in a constitutionally deficient manner in its alleged failure to investigate its witnesses. This claim is DENIED.

### C. Alleged Use of Perjured Testimony

Petitioner maintains that the prosecution fraudulently relied on misrepresentations of "material" fact in obtaining a conviction. (Pet. at 15.) This claim fails for three reasons. First, it involves a pre-plea error. Second, petitioner voluntarily pleaded no-contest as the record reflects that petitioner was aware his plea would result in a conviction. (Ans, Ex. B, Vol. 5 at 11.) Finally, petitioner fails to identify a factual basis in support of his allegation. It is functionally a restatement of the previous claim, with the addition of a charge of prosecutorial fraud as well as negligence. (*Id.*) As with the previous claim, petitioner fails to advance evidentiary support for the three elements necessary to establish a prosecutorial misconduct claim. This claim is DENIED.

### III. Alleged Judicial Misconduct

Petitioner alleges that his due process rights were violated because of judiciary "bias" and "partiality" and an abuse of judicial discretion in the "reasonable determination" of the facts. (Pet. at 16.) He claims that the judge erred by: (1) denying his request to substitute counsel before the pre-trial examination and the sentencing hearing; (2) failing to appoint separate counsel to assist him in handling the ineffective assistance of counsel claim that was the basis for his motion to substitute counsel; (3) misapplying the standard for an ineffective assistance of counsel claim; and (4) having the sentencing hearing and plea bargain before the assignment of a probation officer and the preparation of a probation report, thus resulting in a failure to identify the factors for "reasonable" determination in mitigation or aggravation.

(*Id.* at 16-17.)

A criminal defendant has a due process right to a fair and impartial judge. *See In re Murchison*, 349 U.S. 133, 136 (1955). A judge may violate this right if he or she demonstrates actual bias or appears to advocate for one side in the proceedings. *See Taylor v. Hayes*, 418 U.S. 488, 501–04 (1974); *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (civil context). Nonetheless, it is extremely difficult for a petitioner to establish judicial misconduct in the context of federal habeas review. The question on review is not just whether there was misconduct, but whether the judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (citation omitted), *cert. denied*, 517 U.S. 1158 (1996).

Petitioner has not shown that he is entitled to habeas review on his claim of judicial misconduct. First, the claim is barred under *Moran*, because it concerns pre-plea violations rather than a challenge to the voluntary or intelligent character of petitioner's plea or the nature of counsel's advice to plead. Second, petitioner provides no factual basis for any of the alleged errors.

A denial of an indigent defendant's motion for substitution of counsel is only improper if petitioner can show that "the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc). Petitioner provides no factual support for the claim that a substantial conflict had developed between counsel and himself sufficient to violate his Sixth Amendment rights. As to the first instance during the pre-trial examination, it is not clear from the record that petitioner even made a formal motion to substitute counsel, but the trial judge properly

addressed his concerns in a *Marsden* hearing before proceeding.[5] (Ans., Ex. B, Vol. 1 at 2–3.) As to the second instance, again the trial judge did not deny petitioner's motion (*id.*, Ex. B, Vol. 5 at 67) until he investigated petitioner's claims in a *Marsden* hearing (*id.* at 4.) On both occasions the judge made the appropriate inquiries into petitioner's motions and properly found them lacking factual support.

The trial judge also made no error in failing to appoint separate counsel. A defendant has no right to be represented by independent counsel at the hearing on his motion to substitute counsel if his counsel does not take a position antagonistic to that of the client. *See Stenson v. Lambert*, 504 F.3d 873, 888 (9th Cir. 2007). Petitioner's allegation fails, as there is no indication in the record that counsel acted in an antagonistic manner that would warrant the appointment of separate counsel. Similarly, petitioner's claim that the judge misapplied the ineffective assistance of counsel standard is deficient. Petitioner wrongfully focuses on the ineffective assistance standard as opposed to that applicable to a substitution of counsel motion, a significantly more difficult test requiring proof of a "total lack of communication or other significant impediment" between counsel and petitioner. *See Schell*, 218 F.3d at 1026. Additionally, petitioner fails to provide any basis to believe that the judge did in fact misapply this standard. As to the alleged error involving the judge's failure to assign a probation officer, this is not cognizable in a federal habeas petition. "[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (emphasis in the original). As this allegation involves a matter of California law, it necessarily fails. Petitioner has not shown that the trial judge's conduct rendered the proceedings "fundamentally unfair," as is necessary for a judicial misconduct claim. Accordingly, petitioner's claims are DENIED.

---

[5] *People v. Marsden*, 2 Cal. 3d 118 (1970) requires a trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing.

**IV.    Sentence**

Petitioner claims that his determinate sentence of thirty-one years, four months for two counts of attempted murder of a police officer with one enhancement for personally and intentionally discharging a firearm qualifies as cruel and unusual punishment under the Eighth Amendment.[6]  (Pet. at 18–19.)  A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 303 (1983).  Yet "[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences will be exceedingly rare." *Id.* at 289–90.  Eighth Amendment jurisprudence "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle — the precise contours of which are unclear." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (internal quotations and citations omitted).  "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  Where it cannot be said as a threshold matter that the crime committed and the sentence imposed are grossly disproportionate, it is not appropriate to engage in a comparative analysis of the sentence received by the defendant to those received by other defendants for other crimes. *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998).

In *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole for an offender who had no prior felony convictions and whose sole conviction was for possessing 672 grams of cocaine.  501 U.S. at 995, 961.  In *Andrade*, the Supreme Court,

---

[6] Petitioner makes some unclear arguments regarding the application of Three Strikes to his sentence (Pet., Mem. of P. & A. at 6), and the use of sentencing factors in violation of his Sixth Amendment jury trial rights as they are articulated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  (*Id.* at 10; Trav. at 12.)  Such claims are DENIED.  His claim regarding Three Strikes is at best a claim regarding state law.  Violations of state law are not remediable on federal habeas review, even if state law were erroneously interpreted or applied. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861–62 (2011).  His *Apprendi* claims are DENIED because his admissions at his plea entry hearing waive such Sixth Amendment rights.

1 under the highly deferential AEDPA standard, upheld a sentence of two consecutive 25 year
2 terms for the nonviolent theft of $150 worth of videotapes. 538 U.S. at 77.

Under these precedents, petitioner has not stated a claim that is remediable under federal habeas review. Petitioner was sentenced to thirty-one years and four months in state prison for shooting at two police officers. If, as in *Harmelin*, a life sentence for a nonviolent drug possession conviction was found not to violate the Eighth Amendment, then petitioner's thirty-one years and four month sentence for his violent crimes similarly will not rise to a violation of the Eighth Amendment. Petitioner's claim is DENIED.

## CONCLUSION

The state court's adjudication of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

**IT IS SO ORDERED**.

DATED: May 9, 2012

RICHARD SEEBORG
United States District Judge